IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| MICHAEL BOWMAN, | : | CIVIL ACTION |
| --- | --- | --- |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 12-797 |
| | : | |
| ST. LUKE'S QUAKERTOWN HOSPITAL, | : | |
| Defendant. | : | |

**M E M O R A N D U M**

STENGEL, J.                                                      December 13, 2012

Plaintiff Michael Bowman brings this employment discrimination action against Defendant St. Luke's Quakertown Hospital (St. Luke's). Bowman alleges violations of the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq.*, and the Pennsylvania Human Relations Act (PHRA), 43 P.S. § 951 *et seq.* St. Luke's moved to dismiss. For the following reasons, I will deny the motion in part and grant it in part.

**I. BACKGROUND**

The Complaint sets forth the following facts: St. Luke's hired Bowman in May 2005 as an emergency medical technician and vehicle driver (EMT/EVO). Compl. ¶¶ 12-13. Bowman suffered a transient ischemic attack (TIA) on December 23, 2009.[1] Id. ¶ 14. Bowman subsequently informed Shelly Malley, human resources manager at St. Luke's, that he suffered a TIA. Id. ¶ 15. He also requested leave under the FMLA. Id.

---

[1] "A transient ischemic attack . . . is a sudden loss of neurological function caused by vascular impairment to the brain, with complete recovery within 24 hours. Its symptoms are similar to those of a stroke, but are temporary. A TIA is a warning sign that a stroke may follow." Wright v. Matrix Absence Mgmt., Inc., CIV.A. 03-6160, 2005 WL 475173, at *4 n.6 (E.D. Pa. Mar. 1, 2005) (citations omitted).

1

Malley responded that it was unnecessary for Bowman to apply for FMLA leave, since had accrued over 200 hours of sick leave. Id.

Bowman returned to work on January 4, 2010. Id. ¶ 16. Upon his return, St. Luke's personnel "subjected him to a barrage of discriminatory treatment on the basis of his disability." Id. Specifically, Kermit Gorr, executive director at St. Luke's, repeatedly accused Bowman of being "weak" and "making up" that he suffered a TIA. Id. ¶ 17.

Beginning in March 2010, "various members of [St. Luke's] management," including Gorr and Malley, disciplined Bowman for excessive absenteeism. Id. ¶ 18. Bowman claims that his absences during this time were "due to additional" TIAs[2] and that he never exceeded his accrued sick leave or failed to follow St. Luke's call-off procedures. Id. "As further discrimination," on July 1, 2010, Bowman reported to work on time but was sent home "because there was noone [*sic*] available to serve as his ambulance partner." Id. ¶ 19. Bowman alleges St. Luke's recorded him absent that day, "despite his availability and willingness to work." Id.

On August 10, 2010, St. Luke's terminated Bowman's employment due to excessive absenteeism. Id. ¶ 20. At that time, Bowman had 74 hours of accrued sick leave remaining. Id. ¶ 21. Bowman claims St. Luke's did not terminate other "similarly situated, non-disabled" employees "whose absences far exceeded" his. Id. ¶ 20.

---

[2] St. Luke's makes much of the fact that Bowman's PHRC charge indicates he suffered only one TIA on December 23, 2009, see Doc. No. 9, Ex. B, ¶ 3, while his present Complaint adds that he suffered "additional" TIAs at unspecified times thereafter. As an initial matter, there is nothing inherently inconsistent between these two allegations. More to the point, a plaintiff is not strictly bound by the allegations in his or her administrative charge as long as the resulting civil action is "within the scope of the charge." Barzanty v. Verizon PA, Inc., 361 F. App'x 411, 414 (3d Cir. 2010). Here, Bowman's present Complaint is undoubtedly "within the scope" of his PHRC charge. Therefore, I will accept, for the purpose of the present motion, Bowman's claim that he suffered "additional" TIAs subsequent to the TIA he allegedly suffered on December 23, 2009.

## II. STANDARD OF REVIEW

### A. Rule 12(b)(6)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) examines the legal sufficiency of the complaint. Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The factual allegations must be sufficient to make the claim for relief more than just speculative. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "[C]onclusory or 'bare-bones' allegations will no[t] . . . survive a motion to dismiss." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009).

My inquiry at the motion to dismiss stage is two-fold. First, I must separate the factual and legal elements of each claim. I "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." Fowler, 578 U.S. at 210-11. And second, I must "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" Id. (quoting Iqbal, 556 U.S. at 679). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

3

## B. Extrinsic documents

St. Luke's seeks dismissal pursuant to Rule 12(b)(6) or, in the alternative, summary judgment pursuant to Rule 56(c). With no record before me, I will not treat the present motion as one for summary judgment. Accordingly, because St. Luke's attached to its motion nine exhibits, I must briefly address what documents I may consider at the motion to dismiss stage.

In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, any exhibits attached to the complaint, and matters of public record. Pension Benefit Guaranty Corp. v. White, 998 F.2d 1192, 1196 (3d Cir. 1993). However, "a court may consider a document that is 'integral to or explicitly relied upon in the complaint' without converting the motion to dismiss into one for summary judgment." In re Burlington Coat Factory Securities Litigation, 114 F.3d 1410, 1426 (3d Cir. 1997). For instance, a court may consider a document attached to a motion to dismiss, provided that its authenticity is undisputed and that plaintiff's claims are based on the document. Rogan v. Giant Eagle, Inc., 113 F. Supp. 2d 777, 781 (W.D. Pa. 2000) (citing Pension Benefit, 998 F.2d at 1196).

Exhibit B to St. Luke's motion is Bowman's PHRC charge. It is well settled that a plaintiff's administrative charge of discrimination may be considered on a motion to dismiss as a public record integral to the complaint.[3] Fugarino v. Univ. Services, 123 F. Supp. 2d 838, 841 n.1 (E.D. Pa. 2000). The remaining exhibits include various documents relating to Bowman's employment at St. Luke's, such as corrective action

---

[3] Exhibit A is Bowman's Complaint.

reports and attendance policies, as well as a screenshot of the U.S. Department of Transportation website. Because Bowman expressly disputes the authenticity of these documents, Doc. No. 12 at 2, I will not consider them in evaluating the present motion.

## III. DISCUSSION

### A. ADA and PHRA (Counts I and II)[4]

The ADA[5] makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). To discriminate "on the basis of disability" includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). Consistent with the duty to reasonably accommodate, an employer must "engage the employee in the interactive process of finding accommodations." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 319 (3d Cir. 1999); see also Conneen v. MBNA Am. Bank, N.A., 334 F.3d 318, 329 (3d Cir. 2003).

To make out a prima facie case of disability discrimination, a plaintiff employee must show "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without

---

[4] Because courts "generally interpret the PHRA in accord with its federal counterparts," my analysis of Bowman's ADA claims applies equally to his PHRA claims. Kelly v. Drexel Univ., 94 F.3d 102, 105 (3d Cir. 1996); see also Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 306 (3d Cir. 1999).
[5] The ADA Amendments Act of 2008 (ADAAA), which broadened the definition of disability, took effect on January 1, 2009; it applies to this case because St. Luke's terminated Bowman's employment on August 10, 2010.

5

reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." Gaul v. Lucent Technologies, Inc., 134 F.3d 576, 580 (3d Cir. 1998).

Bowman alleges St. Luke's violated the ADA by terminating him because of his disability, failing to reasonably accommodate his disability, and failing to engage in the interactive process. St. Luke's counters that Bowman cannot prevail on any of these theories because he has not plausibly alleged that he is "disabled," that he is a "qualified individual," or that he ever requested an accommodation. For the following reasons, I will dismiss Bowman's claims for failure to accommodate and failure to engage in the interactive process but retain his disparate treatment claim.

### 1. Has Bowman plausibly alleged he is disabled?

St. Luke's contends that Bowman is not disabled under the ADA, but its argument is premised on Bowman having suffered only *one* TIA. See Doc. No. 9 at 16 ("Assuming . . . Plaintiff in fact had only the one TIA for which he referenced a date of occurrence (12/23/09), Plaintiff has failed to sufficiently plead an ADA 'disability' . . . ."). As indicated supra note 2, I will accept for the present motion Bowman's allegation that he suffered "additional" TIAs subsequent to the TIA he allegedly suffered on December 23, 2009. Because St. Luke's apparently concedes that Bowman has plausibly alleged a disability if he suffered *multiple* TIAs, I do not address this argument further.

### 2. Has Bowman plausibly alleged he is a qualified individual?

A "qualified individual" is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

St. Luke's contends Bowman has not plausibly alleged he is a "qualified individual" because there is no way "that an EMT who has multiple TIAs . . . is somehow qualified to drive an ambulance, or otherwise perform the functions of an EMT who is charged with the health and safety of patients and members of the public." Doc. No. 9 at 20. With no record before me, I cannot say at this early stage that Bowman is not a "qualified individual." Bowman alleges that, during his employment with St. Luke's, he "at all times maintained a satisfactory job performance rating." Compl. ¶ 13. Furthermore, St. Luke's permitted Bowman to work as an EMT/EVO for over eight months—apparently without incident—after he informed Malley that he suffered a TIA. Id. ¶¶ 15, 20. Construing the Complaint in the light most favorable to Bowman, he has sufficiently pled he is a "qualified individual."

### 3. Has Bowman plausibly alleged St. Luke's refused to reasonably accommodate his disability and engage in the interactive process?

An employer who does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability" discriminates "on the basis of disability." 42 U.S.C. § 12112(b)(5)(A). 'Failure to accommodate' includes both refusing to provide an employee with a proposed reasonable accommodation and failing to engage in an interactive process after the employee

7

requested an accommodation. Solomon v. Sch. Dist. of Philadelphia, CIV.A. 10-3221, 2012 WL 831959, at *10 (E.D. Pa. Mar. 12, 2012). St. Luke's contends that Bowman cannot prevail on his failure-to-accommodate claims because he never actually notified St. Luke's that he required an accommodation. I agree.

It is well settled in this Circuit that to prevail on a failure-to-accommodate claim the employee must "make clear that the employee wants assistance for his or her disability." Taylor v. Phoenixville Sch. Dist., 184 F.3d 296, 313 (3d Cir. 1999); see also Conneen v. MBNA America Bank, N.A., 334 F.3d 318, 332 (3d Cir. 2003); Colwell v. Rite Aid Corp., 602 F.3d 495, 506-07 (3d Cir. 2010). "[T]he employer must know of both the disability *and* the employee's desire for accommodations for that disability." Taylor, 184 F.3d at 313 (emphasis added).

Bowman alleges that, following his TIA on December 23, 2009, he "disclosed his disability to Shelly Malley . . . and requested a brief medical leave of absence." Compl. ¶ 15. He also points to the "subsequent TIAs that required him to call out from work" as evidence that St. Luke's was on "sufficient notice that [he] necessitated an accommodation in his work schedule." Doc. No. 12 at 9. As for the "additional" TIAs, Bowman does not allege that in calling off work he ever mentioned them or requested an accommodation for them. Thus, Bowman's "additional" TIAs cannot form the basis of his failure-to-accommodate claim. As for the TIA on December 23, 2009, there is no dispute that Bowman was granted his request for a brief medical leave of absence. Thus, to the extent Bowman's conversation with Malley constituted a request for accommodation, St. Luke's satisfied its duty to reasonably accommodate.

8

Counts I and II are therefore dismissed in part. Bowman's failure-to-accommodate claims are dismissed; however, because there is no dispute that Bowman suffered an adverse employment action when St. Luke's terminated him, and because he has plausibly alleged he was "disabled" and a "qualified individual," his disparate treatment claim survives.

### B. FMLA (Count III)

The FMLA provides that an eligible employee "shall be entitled to a total of twelve workweeks of leave during any twelve-month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" these rights. 29 U.S.C. § 2615(a)(1). Interference includes "not only refusing to authorize FMLA leave, but discouraging an employee from using such leave." 29 C.F.R. § 825.220(b).

To state a claim for interference under the FMLA, a plaintiff must show that (1) he was an eligible employee under the FMLA, (2) the defendant was an employer subject to the FMLA's requirements, (3) the plaintiff was entitled to FMLA leave, (4) the plaintiff gave notice to the employer of his intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he was entitled under the FMLA. Atchison v. Sears, 666 F. Supp. 2d 477, 488 (E.D. Pa. 2009).

Bowman alleges St. Luke's interfered with his FMLA rights by "failing to offer and/or afford [him] leave."[6] Compl. ¶ 33. Bowman interference claim appears to rest on two purported violations. First, Bowman alleges Malley discouraged him from taking FMLA leave following his TIA on December 23, 2009.[7] And second, he alleges St. Luke's failed to offer him FMLA leave for his "additional" TIAs. Doc. No. 22 at 3-4. St. Luke's contends Bowman has failed to plausibly allege that he was an eligible employee, that he was entitled to leave, and that he gave St. Luke's adequate notice. For the following reasons, I will deny the motion as to Bowman's interference claim.

**1.    Has Bowman plausibly alleged he was an eligible employee?**

To state a claim under the FMLA, a complaint must at a minimum contain "allegations that, within the meaning of the FMLA, the defendant is an 'employer' and the plaintiff employee is an 'eligible employee.'" Reddinger v. Hosp. Centr. Servs., 4 F.Supp.2d 405, 411 (E.D. Pa. 1998). An "eligible employee" is an employee of a covered employer who (1) has been employed by the employer for at least 12 months, (2) has been employed for at least 1,250 hours of service during the 12–month period immediately preceding the commencement of the leave, and (3) is employed at a worksite where 50 or more employees are employed by the employer within 75 miles of that worksite. 29 C.F.R. § 825.110(a); see also 29 U.S.C. § 2611(2)(A).

---

[6] Although Bowman does not cite a specific FMLA provision in his Complaint, I interpret this allegation to state only an interference claim. See Doc. No. 12 at 1.

[7] St. Luke's contends that Bowman's encounter with Malley cannot form the basis of his interference claim because it occurred more than two years prior to the filing of his Complaint. 29 U.S.C. § 2617(c)(1). However, Bowman's claim that St. Luke's acted "willful[ly], malicious[ly], wanton[ly], in bad faith and in reckless disregard" of his rights, Compl. ¶¶ 34-35, is sufficient at this early stage to invoke the FMLA's three-year statute of limitations for willful violations. 29 U.S.C. § 2617(c)(2); see also Ridner v. Salisbury Behavioral Health, Inc., 3:11-CV-572, 2011 WL 5089806, at *4 (M.D. Pa. Sept. 28, 2011).

St. Luke's does not contest that it employed Bowman for at least 12 months from the date his leave purportedly commenced or that it employs at least 50 employees within a 75-mile radius of Bowman's worksite. Rather, St. Luke's argues that Bowman did not expressly plead that he worked at least 1,250 hours during the 12-month period preceding his leave. However, Bowman did plead that St. Luke's employed him for over five years from 2005 until 2010, Compl. ¶ 12, and St. Luke's makes no argument that Bowman's employment was interrupted to such a degree that he failed to work the requisite 1,250 hours. See Kaniuka v. Good Shepherd Home, CIV.A. 05-CV-02917, 2005 WL 2994348, at *5 (E.D. Pa. Nov. 3, 2005) ("[T]he Court infers from the fact that Plaintiff was continuously employed for more than three years, as well as the fact that none of the parties have suggested any interruptions to Plaintiff's employment, that she [was employed for at least 1,250 hours of service during the 12–month period immediately preceding the commencement of the leave]."). Thus, I find that Bowman has plausibly alleged he is an "eligible employee" under the FMLA.

2. **Has Bowman plausibly alleged he was entitled to FMLA leave?**

An eligible employee is entitled to FMLA leave for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). A "serious health condition" means an "illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11); see also 29 C.F.R. § 825.115.

St. Luke's argues that Bowman has failed to plausibly allege he suffered from a "serious health condition." I disagree. Construed liberally, the Complaint indicates that Bowman suffered multiple TIAs over the course of several months which necessitated medical leaves of absence ranging from just a day to two weeks. Compl. ¶ 15, 16, 18. At this early stage, Bowman has sufficiently pled that he suffered from a "serious health condition."

### 3. Has Bowman plausibly alleged he notified St. Luke's of his need for FMLA leave?

The FMLA requires an employee to "provide the employer with not less than 30 days' notice, before the date the leave is to begin, of the employee's intention to take leave . . ., except that if the date of the treatment requires leave to begin in less than 30 days, the employee shall provide such notice as is practicable." 29 U.S.C. § 2612(e)(2)(B). The notice provided must be "sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c); see also Sarnowski v. Air Brooke Limousine, Inc., 510 F.3d 398, 402-03 (3d Cir. 2007) (discussing the sufficiency of notice under the FMLA).

St. Luke's contends that, aside from Bowman's TIA on December 23, 2009, he never informed St. Luke's that he suffered "additional" TIAs, that these "additional" TIAs were the cause of his absences, or that he desired FMLA leave for these absences. I agree with St. Luke's that, as to Bowman's "additional" TIAs and his corresponding absences, the Complaint fails to allege that he ever expressly provided notice to St.

Luke's so as to trigger its obligations under the FMLA.  Bowman alleges he "adhered to, and abided by, [St. Luke's] 'call-out' procedures," Compl. ¶ 18, but he does not allege he ever mentioned his TIAs in doing so.  Although an employee "need not use any magic words" in providing notice to his or her employer, Sarnowski, 510 F.3d at 402, merely "[c]alling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act."  29 C.F.R. § 825.303(b).

However, Bowman does allege that he informed Malley he suffered a TIA on December 23, 2009, and that he "requested a brief medical leave of absence under the FMLA."  Compl. ¶ 15.  "[I]n analyzing whether an employee's statement provided his employer with sufficient notice, the statement must be viewed in the context of the employer's knowledge of the employee's condition."  Hayduk v. City of Johnstown, 580 F. Supp. 2d 429, 469 (W.D. Pa. 2008).  In rare cases, an employee's indication that he or she is "sick" may provide the employer with adequate notice where it is otherwise "supported by details suggesting a serious health condition."  Burnett v. LFW Inc., 472 F.3d 471, 481 (7th Cir. 2006).  Whether Bowman's subsequent "call-outs" provided St. Luke's with adequate notice in light of his prior indication that he suffered a TIA and wanted FMLA leave is a question not ripe for resolution at this early stage.

Accordingly, Bowman's interference claim survives.

13

## IV. CONCLUSION

For the foregoing reasons, Counts I and II are dismissed to the extent they assert claims for failure to accommodate and failure to engage in the interactive process. The motion is denied as to all other claims contained in the Complaint.

An appropriate order follows.